# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Charles C. Brennan and Mary Brennan,<br><br>　　　Plaintiffs<br><br>v.<br><br>Cadwell Sanford Deibert & Garry LLP and Cup O'Dirt LLC,<br><br>　　　Defendants | Case No.: 2:20-cv-00799-JAD-VCF<br><br>**Order Granting Motions to Dismiss and Closing Case**<br><br>[ECF Nos. 8, 9] |

Two South Dakota lawsuits are the foundation of this abuse-of-process case. Plaintiffs Charles and Mary Brennan sue South Dakota-based[1] Cup O'Dirt LLC and its lawyers at Cadwell Sanford Deibert & Garry LLP, arguing that the defendants had no basis to sue the Brennans in either South Dakota suit.[2] Both defendants move to dismiss the Brennans' claim, arguing that this court lacks jurisdiction over them because their only connections to Nevada stem from the South Dakota litigation.[3] Because the Brennans have failed to demonstrate that the defendants have a sufficient connection to this forum beyond the Brennans' presence here, I grant the defendants' motions to dismiss and close this case.[4]

---

[1] ECF No. 9-1 at ¶ 2 (Small declaration).

[2] ECF No. 1-3 (complaint).

[3] ECF Nos. 8 (Cadwell's motion to dismiss), 9 (Cup O'Dirt's motion to dismiss).

[4] I deny the Brennans' footnoted request for an evidentiary hearing and to conduct jurisdictional discovery, ECF No. 18 at 11 n. 3, because the Brennans haven't demonstrated that "pertinent facts bearing on the [jurisdictional] question . . . are controverted." *Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). The parties agree that the defendants sent letters to the Brennans and had them personally served in Nevada—what they dispute is whether these uncontroverted facts are sufficient to establish jurisdiction here. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

**Background**

After a 2015 deal to purchase a radio station soured, Cup O'Dirt, through its South Dakota lawyers at the Cadwell firm, filed suit in South Dakota state court against Mr. Brennan and a company that he managed.[5] The South Dakota court dismissed the claims against Mr. Brennan in his personal capacity, and the case went to trial over the contract's liquidated damages against only the company.[6] The jury found for Cup O'Dirt and awarded it the contract price plus attorneys' fees.[7] But Cup O'Dirt maintained that it was unable to collect the full amount.[8] So it sued a host of parties, including both Brennans individually, in the South Dakota federal court, seeking to pierce the corporate veil to recover from the Brennans and arguing that a series of fraudulent transfers kept it from recovering what it is owed.[9] As part of that suit, the defendants mailed requests to the Brennans in Nevada for them to waive service of process.[10] When the Brennans refused, the defendants caused them to be personally served in Nevada.[11] Ms. Brennan was eventually dismissed from the federal suit for lack of personal jurisdiction.[12]

The federal South Dakota lawsuit is ongoing, but the Brennans vehemently dispute that they should have ever been named in either South Dakota case. So they sue the defendants in this Nevada suit for abuse of process, arguing that the defendants knew they had no basis to recover from the Brennans personally, and that naming them was merely a scare tactic. The

---

[5] ECF No. 1-3 at ¶ 10–13.
[6] *Id.* at ¶ 17.
[7] *Id.* at ¶ 18.
[8] ECF No. 8-2 at ¶ 7 (Sanford declaration).
[9] ECF No. 17-4 (federal complaint).
[10] ECF Nos. 17-5 (letter to Ms. Brennan), 17-8 (letter to Mr. Brennan).
[11] ECF No. 1-3 at ¶¶ 33, 64.
[12] ECF No. 17-7 at 34.

defendants move to dismiss this Nevada action, arguing that they are not subject to this court's personal jurisdiction because merely effectuating service and sending litigation documents is insufficient to establish a connection with Nevada. The Brennans respond that the Cadwell firm is subject to this court's jurisdiction because it knew that the Brennans lived in Nevada when it sent the documents into the forum. They add that these acts also tether Cup O'Dirt to Nevada because Cadwell was its agent and acted in the forum on its behalf.

## Discussion

The Fourteenth Amendment limits a forum state's power "to bind a nonresident defendant to a judgment of its courts,"[13] so Federal Rule 12(b)(2) authorizes a court to dismiss a complaint for lack of personal jurisdiction. To determine its jurisdictional reach, a federal court must apply the law of the state in which it sits.[14] Because Nevada's long-arm statute reaches the constitutional ceiling,[15] the question here is whether jurisdiction "comports with the limits imposed by federal due process."[16] A court may only exercise jurisdiction over a nonresident defendant with sufficient "minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[17]

The parties do not dispute that this court lacks general personal jurisdiction over the defendants, so I need only evaluate whether this court has specific jurisdiction over them. It is axiomatic that specific jurisdiction "focuses on the relationship among the defendant, the forum,

---

[13] *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

[14] *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

[15] Nev. Rev. Stat. § 14.065.

[16] *Walden*, 571 U.S. at 283 (quoting *Daimler AG*, 571 U.S. at 125).

[17] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

and the litigation."[18]  This means that "the plaintiff cannot be the only link between the defendant and the forum,"[19] and "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."[20]

      Courts in the Ninth Circuit apply a three-prong test to resolve whether specific jurisdiction exists.[21]  The plaintiff bears the burden of satisfying the first two by showing that (1) the defendant "purposefully direct[ed] [its] activities toward the forum" and that (2) the claim "arises out of or relates to the defendants' forum-related activities."[22]  If she does, the burden shifts to the defendant to "present a compelling case" that jurisdiction would be unreasonable.[23]  An insufficient showing at any prong tumbles the entire personal-jurisdiction Jenga tower.[24]  In cases involving intentional torts that occur outside the forum, courts apply the "effects" test announced in *Calder v. Jones*[25] to determine whether the defendant purposefully directed its activities toward the forum.[26]  This requires a plaintiff to plead facts that, taken as true, show that

---

[18] *Walden*, 571 U.S. at 283–84 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

[19] *Id.* at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[20] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

[21] *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

[22] *Axiom Foods, Inc. v. Acerchem Int'l., Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (internal quotation marks omitted).  Because this suit sounds in tort, I address only the "purposeful direction" test. *Id.* (applying the "purposeful availment" test to contract claims).

[23] *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477).

[24] *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995); *Boschetto*, 539 F.3d at 1016 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006)) ("[I]f the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.").

[25] *Calder v. Jones*, 465 U.S. 783 (1984).

[26] *Freestream Aircraft (Bermuda) Limited v. Aero Law Group*, 905 F.3d 597, 606 (9th Cir. 2018).  An intentional tort committed within the forum "is a purposeful act that will satisfy the first two requirements [of the minimum-contacts test]." *Id.* at 603.  Because the Brennans'

4

the defendant committed an intentional act, expressly aimed at the forum, causing harm that the defendant knows is likely to be suffered in the forum.[27] Because jurisdiction over Cup O'Dirt depends on whether the acts it directed the Cadwell firm to make are sufficient, I first consider whether jurisdiction over the law firm is appropriate.

**A.      This court lacks personal jurisdiction over the Cadwell firm.**

Whether this court may exercise personal jurisdiction over the Cadwell firm is guided by the Ninth Circuit's decision in *Morrill v. Scott Financial Corporation*, which concerned a similar out-of-state claim for abuse of process.[28] The *Morrill* dispute began as a Nevada lawsuit over a failed development project, in which an Arizona law firm represented the plaintiffs.[29] Throughout the course of litigation, the defendants' Nevada-based lawyers sent correspondence to the Arizona lawyers and commenced a companion Arizona action to depose them.[30] The litigation intensified and the Nevada lawyers eventually filed a defamation suit in Nevada against the Arizona lawyers for statements made during the underlying case.[31] The Arizona lawyers responded by suing the Nevada lawyers in Arizona for abuse of process, claiming that the Nevada lawyers' actions caused their clients to seek new counsel.[32] They argued that the Nevada lawyers directed their activities at Arizona when they called and emailed the Arizona lawyers,

---

abuse-of-process claim is based on the lawsuits that occurred in South Dakota, I apply the *Calder* effects test here. *Id.* at 606.

[27] *Schwarzenegger*, 374 F.3d at 803 (citing *Dole Food*, 303 F.3d at 1111).

[28] *Morrill v. Scott Financial Corp.*, 873 F.3d 1136, 1139 (9th Cir. 2017).

[29] *Id.*

[30] *Id.* at 1140.

[31] *Id.* at 1141.

[32] *Id.*

5

traveled to and litigated in Arizona, and served the Arizona lawyers with the Nevada defamation suit in Arizona.[33]

The Ninth Circuit panel in *Morrill* disagreed, concluding that because the Nevada lawyers' actions were limited to acts related to the Nevada litigation and their only connection to Arizona was the Arizona lawyers, the Nevada lawyers hadn't purposefully directed their activities toward Arizona.[34] The court explained that while the Nevada lawyers physically entered the forum, the entry was "merely incidental to an out-of-state transaction."[35] And although the Arizona lawyers were served in Arizona with process for the defamation suit and with other documents for the Nevada litigation, service was done "as part of" the underlying out-of-state construction litigation and for a separate case that "was not otherwise linked to" the forum.[36] Focusing on the defendants' relationship *with the forum* and *not with the plaintiffs*, the court noted that "the forum was only implicated by happenstance of [the] [p]laintiffs' residence."[37] And as the Ninth Circuit emphasized when relying on *Morrill* in a later, unrelated case, "it was the litigation—and only the litigation—that brought the *Morrill* defendants to Arizona."[38]

The Brennans argue that three of the Cadwell firm's actions satisfy the purposeful-direction prong: it sued them in South Dakota "without a valid purpose"; it mailed letters to the Brennans asking them to waive service; and when the Brennans refused to waive service, it had

---

[33] *Id.* at 1142–43.
[34] *Id.* at 1144.
[35] *Id.* at 1147.
[36] *Id.*
[37] *Id.* at 1146.
[38] *Freestream Aircraft*, 905 F.3d at 606.

6

them served in Nevada.³⁹  But these contacts are directly related to the South Dakota litigation and cannot alone tie Cadwell to Nevada because they do not demonstrate that Cadwell has any connection to the forum, just to the Brennans.  Much like the out-of-state litigation that brought the Nevada lawyers into Arizona in *Morrill*, the Cadwell firm's Nevada conduct here was done solely as part of the South Dakota cases.  The conduct is thus merely incidental to the out-of-state litigation that forms the basis for the Brennans' claim, and it is insufficient to establish this court's jurisdiction over the Cadwell firm.

Instead of demonstrating that Cadwell has any connection to the forum beyond these litigation-related acts, the Brennans contend that "long-standing precedent" confirms that "express aiming is satisfied when the defendant . . . engage[s] in wrongful conduct targeted at the plaintiff whom the defendant knows to be a resident of the forum state."⁴⁰  But exercising jurisdiction over this South Dakota law firm here would impermissibly shift the focus from its ties to Nevada to its ties to the plaintiffs who live in this state.  As the Supreme Court held in *Walden v. Fiore*, "[t]his approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis" and "obscures the reality that none of" the "challenged conduct had anything to do with [the forum] itself."⁴¹  Were the Brennans anywhere else in the country, the South Dakota litigation and its paper trail would have followed them and implicated "by happenstance" any forum where they

---

³⁹ ECF Nos. 17 at 13–14, 18 at 14–15.  The Brennans also allege that the defendants "made a demand" for $2,000,000 "in a recent communication" with Mr. Brennan.  ECF No. 1 at ¶ 66.  But this allegation lacks any facts that would suggest that this communication was directed at the forum, and the Brennans do not highlight this communication in their personal-jurisdiction briefing, so I do not consider it.

⁴⁰ ECF No. 17 at 14.

⁴¹ *Walden*, 571 U.S. at 289.

happened to be.[42] And even assuming that the correspondence and service added to the Brennans' injuries, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects [it] to the forum in a meaningful way."[43]

The Brennans also argue that it is "dizz[yingly] "absurd" that Ms. Brennan would have to sue in a South Dakota court that has already ruled it doesn't have jurisdiction over her.[44] But this argument highlights the misplaced focus of the Brennans' personal-jurisdiction argument. Under the Brennans' theory of personal jurisdiction, the South Dakota court would now maintain jurisdiction over Ms. Brennan because she, through her lawyers, served process on the defendants in South Dakota for this abuse-of-process case.[45] But that alone wouldn't demonstrate that Ms. Brennan has any connection to South Dakota, much like the Cadwell firm's actions here. The Brennans have thus failed to meet their burden at the first prong to show that Cadwell purposefully directed its activities at Nevada, so I find that this court lacks jurisdiction over the Cadwell law firm.

**B.      This court lacks personal jurisdiction over Cup O'Dirt.**

The dismissal of the claim against Cadwell leaves only the Brennans' claim against Cup O'Dirt. The Brennans do not offer an independent reason for this court to exercise jurisdiction over Cup O'Dirt. They contend only that Cup O'Dirt subjected itself to the reach of this court because it acted as a principal and directed the Cadwell law firm to send documents to the

---

[42] *See Morrill*, 873 F.3d at 1146.
[43] *Id.* at 290.
[44] ECF No. 17 at 18.
[45] *See* ECF Nos. 5 (proof of service for Cadwell), 6 (proof of service for Cup O'Dirt).

Brennans and have them served in Nevada.[46]  By making the analysis for Cup O'Dirt's ties derivative of, or dependent upon, the Cadwell firm's, the Brennans doom their chance of keeping Cup O'Dirt in this forum.  Because the Brennans have failed to show that either Cadwell or Cup O'Dirt purposefully directed activities at this forum, I also grant Cup O'Dirt's motion to dismiss.

**Conclusion**

IT IS THEREFORE ORDERED that Cadwell Sanford Deibert & Garry LLP's motion to dismiss **[ECF No. 8] and** Cup O'Dirt LLC's motion to dismiss **[ECF No. 9] are GRANTED**.  This case is dismissed without prejudice and without leave to amend for want of personal jurisdiction.  The Clerk of Court is directed to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
February 2, 2021

---

[46] *See* ECF No. 18 at 13–14.